CLERK'S OFFICE U.S. DISTRICT COURT
AT ROANOKE VA. - FILED

MAR 15 2010

JOHN F. CORCORAN, CLERK
BY: /s/ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MELVIN COREY MADDOX, | ) |
| Plaintiff, | ) Case No. 7:09CV00179 |
| v. | ) |
| | ) MEMORANDUM OPINION |
| GENE M. JOHNSON, ET AL., | ) |
| | ) By: Glen E. Conrad |
| Defendants. | ) United States District Judge |

Plaintiff Melvin Corey Maddox brings a motion for interlocutory injunctive relief in this civil action pursuant to 42 U.S.C. § 1983. Upon review of the record, the court finds that the motion must be denied.

## I. Background

Maddox filed this civil rights action in May 2009, alleging that the defendants, prison officials at Red Onion State Prison, used excessive force against him and acted with deliberate indifference to his serious medical needs related to a shoulder injury. The case is ripe on defendants' motions for summary judgment, and they will be addressed by separate opinion and order. Maddox now seeks interlocutory injunctive relief, directing that he be transferred to another prison facility, where he can be free from interference with his ability to access the court and alleged retaliatory actions motivated by the pending lawsuit, and directing that he be examined by a specialist who can set up a plan of treatment for his shoulder problem. The court directed defendants to respond to Maddox's motion, and they have done so. Maddox then filed a reply brief, contesting defendants' arguments that his motion should be denied for failure to exhaust administrative remedies.

### A. Plaintiff's Allegations in Support of Motion

Maddox's medical claims in the lawsuit itself allege that he has been diagnosed with a dislocated shoulder (on several occasions), abnormal nerve activity in that injured arm, and a possible "rotator cuff tear with labral tear." In support of this motion, Maddox cites the following events that have allegedly occurred since this lawsuit was filed.

On August 10, 2009, while escorting Maddox to recreation, Officer Large "pushed on" the inmate's injured shoulder. When Maddox asked him not to do that, as they descended some stairs, the officer elevated the injured arm by the elbow, while pressing down on the shoulder and then denied the inmate his scheduled recreation time.

In the months that followed, officers denied Maddox recreation many times, threatened to destroy his legal work or to bring fabricated disciplinary charges against him, deprived him of sleep, and refused to fix his food tray when it was contaminated or some item was missing. In December 2009, Sgt. Gilbert offered Maddox some Penthouse magazines and bags of coffee if he would drop this lawsuit. When Maddox declined this deal, the officer harassed and threatened him further.

On January 14, 2010, Maddox filed medical request forms, stating that his shoulder had started to slip out of joint. When this request was not answered, he filed another one on January 21, again with no response. He tried emergency grievances, and nurses responded that his condition was not an emergency and he should file proper forms. He asserts that he has been denied medical care for more than twenty days, is suffering pain, and is in imminent danger of having his shoulder slip out of joint again.

**B. Defendants' Evidence in Response to Motion**

There are two groups of defendants in this case, represented by separate counsel: the medical defendants and the security defendants. By agreement, the medical defendants responded to the medical issues raised in Maddox's motion for interlocutory injunctive relief, while the security defendants responded to the remaining issues.

The medical defendants offer medical records that reflect the medical evaluation and treatment Maddox has received from August 2009 to the present. On August 21, 2009, eleven days after the alleged incident with Officer Large, two scanned views of Maddox's right shoulder revealed no fracture or dislocation. In a September 25, 2009 consultation, Dr. W. Henceroth, VDOC orthopedist, noted that Maddox had not sustained a dislocation of his right shoulder since March 2008, that he had good range of motion, and that no treatment was necessary at that time.

Defendants' records also indicate that on February 4, 2010, the medical unit logged a request from Maddox, complaining about his shoulder and his hand. Nurse Mullins saw Maddox at sick call on February 5 and referred him to see the doctor. Dr. Ball evaluated Maddox's shoulder condition on February 11, 2010. Dr. Ball noted no edema and indicated that Maddox was able to straighten the fingers on his right hand with little tension noted. Maddox was started on a three-month course of Neurontin and instructed to follow up with medical as needed. The medical unit records indicate that Maddox is compliant with his medication and do not indicate that he has filed sick call requests or emergency grievances regarding shoulder pain since February 11, 2010. Defendants' evidence indicates that Maddox's most recent X-rays, CT scan, and MRI are all normal at this time, that he is functional, although he complains of pain occasionally, and that his condition is supported by pain

medication and an order for double cuffing. Based on this protocol, no outside consultations regarding his shoulder problem are pending at this time.

The security defendants offer evidence that Officer Large normally works in A building and does not know the inmates in C Building, where Maddox is housed. He does recall working in C-3 unit on one occasion in August 2009, when an inmate he was escorting stopped on the way down some stairs and began to talk in an agitated way. Large states that he and the other escorting officer interpreted the inmate's behavior as disruptive, and according to policy, inmates who act disruptively while being transported to recreation are returned to their cells. Large denies that he purposely injured Maddox's shoulder or otherwise used excessive force against him in August 2009 or at any other time.[1]

## II. Discussion

Because interlocutory injunctive relief is an extraordinary remedy,[2] the party seeking the preliminary injunction must make a clear showing "(1) that he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) an injunction is in the public interest." Real Truth About Obama, Inc. v. FEC, 575 F.3d 342, 346-47 (4th Cir. 2009) (quoting Winter v. Natural Resources Defense

---

[1] The security defendants also offer an affidavit from the grievance coordinator, who says that Maddox has not exhausted his administrative remedies about the new allegations raised in his current motion. Maddox has responded, disputing this evidence. Accordingly, the court will not rely on Maddox's failure to comply with 42 U.S.C. § 1997e(a) in determining whether interlocutory injunctive relief is warranted.

[2] Maddox requests both a temporary restraining order and a preliminary injunction. Temporary restraining orders are issued only rarely, when the movant proves that he will suffer injury if relief is not granted before the adverse party could be notified and have opportunity to respond. See Rule 65(b), Federal Rules of Civil Procedure. Such an order would only last until such time as a hearing on a preliminary injunction could be arranged. As it is clear from the outset that petitioner is not entitled to a preliminary injunction, the court finds no basis upon which to grant him a temporary restraining order.

Council, Inc., ___ U.S. ___, 129 S. Ct. 365 (2008)). "Winter articulates four requirements, each of which must be satisfied as articulated" before interlocutory injunctive relief is warranted. Id. at 347.

Courts should grant preliminary injunctive relief involving the management of prisons only under exceptional and compelling circumstances. Taylor v. Freeman, 34 F.3d 266, 269 (4th Cir. 1994). The functions of prison management must be left to the broad discretion of prison administrators to enable them to manage prisons safely and effectively. Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991).

Based on the record now before the court, the court concludes that Maddox cannot demonstrate that he will suffer irreparable harm in the absence of court intervention. First, he cannot demonstrate any substantial likelihood that he will suffer irreparable harm in the absence of referral to a shoulder specialist for a treatment plan. On the contrary, the medical records indicate that after the alleged shoulder aggravation in August 2009, he received medical treatment, and doctors found no dislocation.

Furthermore, since Maddox's shoulder complaint in January 2010, a physician has evaluated his condition, and he is receiving ongoing treatment for his shoulder and hand pain. Based on the condition of his shoulder and his symptoms since the August 2009 incident, the consensus among the members of his treatment team has been that no outside consultation is medically necessary at this time, because Maddox's needs can be met with pain medication and special accommodation when he is being handcuffed.

Second, Maddox has nothing more than speculative fears of suffering future harm from being escorted by Officer Large. This officer does not work in the same area where Maddox is housed.

Moreover, decisions about prison administration, including appropriate housing assignments for inmates, are not the province of this court. Gaston, 946 F.2d at 343.

Third, Maddox's conclusory allegations about officers' other alleged retaliatory actions—threats to destroy legal work, depriving him of food items or sleep, or denying him recreation on occasion—are not sufficient to indicate any likelihood that these actions will cause him irreparable harm in the absence of court intervention. Indeed, he does not allege facts on which a factfinder could determine that any of these alleged actions have caused him harm, to his person or to his litigation efforts. See Strickler v. Waters, 989 F.2d 1375, 1380-83 (4th Cir. 1993) (requiring showing of actual harm to state constitutional claim regarding prison conditions or access to courts).

III

For the stated reasons, the court concludes that Maddox has failed to demonstrate that he will suffer any irreparable harm in the absence of the requested interlocutory injunctive relief. Accordingly, the court will deny his motion. An appropriate order will enter this day.

The clerk will send a copy of the order and the accompanying memorandum to plaintiff and to counsel of record for the defendants.

ENTER: This 15th day of March, 2010.

*[signature]*
United States District Judge